Judge Lagoa, Judge Carnes, and I are happy to welcome you to the first day of our panel sitting here in Atlanta, warm Atlanta, but it's not as hot as Miami is, so be grateful for what you have. You know the drill with our lights. When the yellow light goes on, that means that your time is drawing to a close, so begin to wrap up. If we take you beyond the red light, then don't worry about that. Just keep going. You'll be on our time and not yours. And with that, we're ready for our first case, which is No. 22-10267, United States v. Marco Perez. Mr. Beck. Mr. Beck, I know that you're a court appointed for Mr. Perez. We want to thank you on behalf of the court for your service to him and to us. We really do appreciate it. Your Honor, I appreciate that. Thank you very much. It's been my pleasure. I got an offer I couldn't refuse, but I've enjoyed it. Good morning. Good morning, Judge Carnes. Good morning, my friend, Mr. Gray and Mr. Bodner. May it please the court. My name is John Beck, and I've represented Mr. Perez since the inception, as you know, and it's been about 30 years since my last oral argument, and I hope I'm better at it now than I was in law school, but I guess we'll find out. This appeal concerns the fundamental question of whether a sentence under 18 U.S. Code 3147 can increase the statutory maximum for the underlying offense and, therefore, in violation of Apprende and also contrary to the Guidelines 3C1.3 and also the commentary to the Guidelines. My position is that it not only cannot go beyond the statutory maximum, but doing so would be a violation of Apprende v. New Jersey. All right. Let me ask you a question. I think I speak only for myself. My preliminary view is that you're right about Apprende, but let me ask you to think about the world without Guidelines. How do you think, putting the Apprende issue aside, how do you think 3147 operates in a world without Guidelines? Well, the way that I would answer that, and I'm familiar with the Henry case, and I understand that the Guidelines are only advisory, the — No, but if you didn't have them at all, like if Congress tomorrow decided to abolish the Sentencing Commission and the sentencing guidelines, and we went back to the old days of indeterminate sentencing — Yes, sir. — how would 3147 operate? Well, the plain language threw me off also. I mean, when I read 3147 in all candor, it says a sentence consecutive. And so without consideration of Guidelines, then I think I would have to look at how this Court has interpreted 3147, admittedly under other circumstances, with respect to the proper notice pursuant to Rule 11, and I believe we see those in the Bozeman and the Tyndale cases. So, for purposes of how this Court has interpreted it, and I don't, you know, I guess I can't answer that question without circling back to the Guidelines because that's what the Court utilized. But if we were starting fresh and there was no precedent — and I'm not saying it's very decisive. It's a different question. I understand that. But if we're saying that there is precedent for how 3147 is going to be interpreted, that's what I would say. So how do they work in a non-Guideline world? How do you give effect? If you didn't have Guidelines and you had someone with a predicate offense and the judge wanted to impose a consecutive sentence under 3147, your position is that in a non-Guideline world, the judge would be limited by the statutory maximum of the underlying offense? Yes, sir. Okay. And the further thing that I would say is that this is — the overall punishment is with respect to the underlying offense, and then the sentence plus the other sentence that is consecutive has to be within the overall — the punishment for the underlying offense. And I think what that invites now is a — you know, the question under Apprendi, and I understand, of course, that my opposing counsel has, at least it appears, suggested that a harmless error approach should be taken by this Court on that question. First of all, I will point out that I objected probably four different times to the imposition of the sentence being in excess of the statutory maximum and also in violation of Apprendi and was specifically overruled three times. And I can refer to the record if that would be helpful. The problem with this case from the Apprendi standpoint is we were never given any notice whatsoever that 3147 was going to be utilized. And as a trial attorney and certainly as Mr. Perez's attorney, that had — that has a tremendous effect on how I handle a case. I understand that I never questioned whether Mr. Perez was on supervised release, and I certainly stipulated to a lot of facts that were not really an issue. And that's pointed out by my opponent that I did not question whether or not he was on release. And there's a lot of facts in any trial that I'm not going to, for a matter of trial strategy, I'm not going to question because it's a fact that's not in dispute. And it's a fact that's not in dispute that didn't have any kind of a impact, ultimately, on what I saw as the ultimate trial strategy. And as you might have seen from the record, I — we pretty much gave up Count 1 and 2 because I feel like the evidence was fairly overwhelming, and my client was ready for that eventuality. He knew that he was — he was probably going to get convicted of Count 1. He was probably going to get convicted of Count 2. He was probably going to get a total of 15 years. I mean, his resume was not impressive. And — but I was able to communicate that to him. And if he was convicted on Counts 3 and 4 — Can I ask you a question? Yes, ma'am. When he was on pre-trial release before he committed the other crimes that were the charges that you're talking about now, he signed a condition of release where he acknowledged that he would be subject to statutory enhancements. Yes, ma'am. Yes. And I'd like to address that. He — I mean, so he was on notice. That's not — it didn't come out of thin air. It did not. No, ma'am. And I would never suggest that he was not on supervised release. And quite frankly, if I — Not just supervised release, but that he had notice and he signed a piece of paper that acknowledged that he would be subject to a statutory enhancement if he committed another crime while on supervised release. Let me answer it this way, if I may. If I had known that 3147 was in the ballgame — and I'm not sure when the government decided to put 3147 and inject that into the equation. But — and I'm taking this from Rehave, because I believe that the government would have had to have proven that Mr. Prez knew about his status and understood what his status is. On page 8 of the government's brief, they talk about Mr. Prez's interaction with Allison Hicks, who was one of his friends. That his status of what? That he was on — On supervised release. Yes, ma'am. And he told Ms. Hicks — You mean — you mean pre-trial release? I'm sorry. Yes. Pre-trial release, I do. Thank you for catching that. He told his friend, Allison Hicks, that he thought he was on probation. And that's throughout — and that is throughout the record. That affects my trial strategy, because then I can ask Mr. Marsal about how he went over that form with Mr. Prez. I can ask Mr. Prez if he understood it. I can ask Mr. Prez's mother if she understood it. And it opens up a factual inquiry that I otherwise — is opposing counsel correct? Would I have probably stipulated to it? Well, sure. Unless I knew it was an issue that could have added 10 years to my client's sentence. It in all likelihood was absolutely going to add 10 years to my client's overall sentence. The — Counsel, what would your argument have been if he had his signature on a form? Saying he had been informed of that and realized it. Your argument would be he can't read, can't speak English? What's — Well, I think as a matter of trial strategy, Your Honor, that I would have to — I would need to investigate whether in fact Mr. Prez — Just imagine in your wildest dreams the best possible investigation results. You're trying to convince us that when he signed the form that said he would be subject to enhancements if he committed another crime while he was out. How did he not understand that? It's not terribly technical language. I don't — in all candor, I don't know, Your Honor, if he understood what he was signing. My point — my whole point is it affects — I know, Counsel. I understand. But you said if I'd known that, that would have been different tactics, different strategy. Tell us what you would have done differently. I — well, I — what I would have done differently, my communications with my client would have been completely different about what he was looking for. I'm — Okay. Okay. Imagine the best possible answers from your client. That he totally understood. No. That he didn't understand anything. Yes, sir? I mean, I don't understand your position that things would have been better for you. Tell me how they would have been better, no matter — I mean, you can put words in your client's mouth. I'm trying to imagine how you could beat the plain language that he signed on that form. I would never, certainly, put words in my client's mouth. I'm offering you the opportunity to do that for purposes of exploring your argument. Imagine that he had said — you didn't prompt him. You didn't lead him. Imagine he had said the best possible thing for your argument right now. What would he have said about how he didn't understand what that plain language meant? That he would have told me that I thought I was on probation, that's what I thought that the man told me. But can you tell me exactly — it says specifically here. The commission of a federal offense, while on pretrial release, will result in an additional sentence of a term of imprisonment of not more than 10 years. And then it says, Acknowledgement of Defendant. I acknowledge that I am the defendant in this action and that I am aware of the conditions of release. It doesn't say probation. I promise to obey all conditions of release to appear as directed and to surrender for I am aware of the penalties and sanctions set forth above, and then it has his signature and the date. Yes, ma'am. And I'm talking more about a subjective understanding on Perez's part, that he understood or that he knew that he was under that class. And I would have asked for a jury charge also if — this is all predicated on if 3147 was even before the jury and had been pled, which, of course, it had not. I would like to say one last thing because I know my time is over. If you look at Count 3 of the indictment, the language of 3147 is actually contained in Count 3 of the indictment. My opponent has invited us to look at Count 1, which has similar language and similar elements, which Mr. Perez was convicted of, but Count 3, he was acquitted of. And this is all the problem with not having notice about what I'm dealing with. Is it possible that, you know, would my job have been more uphill if 3147 had been — absolutely. I'm not denying that, but I still want that shot. Thank you. Mr. Gray, whenever you're ready. Thank you, Your Honor, and may it please the Court. Scott Gray on behalf of the United States of America. Two principles should guide the outcome of this appeal. The meaning of 18 U.S. Code Section 3147 is clear on its face, and Marco Perez's factual eligibility for that enhancement is undisputed. The district court properly applied the Section 3147 enhancement in this case, and this Court should affirm the sentence. Do you — do you think that there was an apprendi problem? Not an insurmountable one, but an apprendi problem, because the district court did not accept Mr. Beck's repeated apprendi objection. But it seems to me that if you're tacking on a mandatory consecutive sentence that exceeds the statutory maximum for the underlying charges of conviction, apprendi and its progeny teach that you need to submit those sentencing enhancement facts to a jury. So, Your Honor, the short answer is I respectfully disagree that an apprendi error occurred, but I believe it's a very close question. I don't want to see — Why was there no apprendi problem? So there's sort of a general and a specific layer of analysis to apprendi. First, what apprendi said was that its analysis occurs to facts other than a prior conviction, and several courts have noted that the issue in 3147 is so close to the fact of a conviction itself. It's not a conviction. You're on pretrial release where you are presumed to be innocent until and when you are found guilty beyond a reasonable doubt. It's not prior criminal history. I think you're right on the statutory language and how it applies, but there has to be, I think, an apprendi issue. You are going over and above the statutory maxima for the underlying offenses of conviction. Apprendi says whatever triggers that mandatory statutory enhancement has to go to a jury. But I think if the court looks at decisions like Dudley, it illustrates that what constitutes part of sort of the bundle of documents or the bundle of records that constitutes a prior conviction is more nuanced than the rote fact that a conviction occurred. However, I respectfully recognize that... You've got it backwards, I think. You're checking to see what proves the underlying... You're checking to see what documents are used to prove the fact of criminal history. But if you're not convicted, you're outside of the world of almendares torres, are you not? I don't think so. So the court noted in apprendi on page 488 the two elements of a prior conviction that allowed for that exception to the general rule. And the court noted the availability of procedural protections and the fact that the fact itself was undisputed. And both of those elements are true here. The level of procedural protections for pretrial release are high. It was a matter of a judicial order that was part of a record in the criminal case. And in addition, the factual nature of that pretrial release hasn't been disputed in any stage of the proceedings. That just goes to harmlessness. That doesn't go to whether or not you've got to put it before a jury. I mean, he got 10 extra years over and above his statutory maxima for the offenses of conviction. And you're suggesting that a judge can just determine those facts on his or her own when there's a valid objection? Well, I think there's an additional point here, which was sort of the specific point that I was going to make, which was here, at least with the 922n charge. All of this information was basically before the court. And the district court made that notation at sentencing in document number 88, page 9, saying all of this was before the jury. However, I agree with you that all of these arguments I'm making now dovetail with harmlessness. And I think that's ultimately where the outcome should be, in that this Court should find that any apprendi error that did occur was harmless in the vein of this Court's other harmlessness cases in the apprendi context, namely Neely and Anderson, which the United States relied upon in its brief. So Mr. Beck today relies on a notice theory. And I do want to be clear factually. Perez had notice of his status on pre-trial release. But I also think that's the wrong ultimate way of looking at it. The question before the court really is, if there were a do-over, if the trial happened again with all of these things being brought to the fore in the light of whatever guidance the court wishes to provide about how this should occur, the question is, would there have been a different outcome? Or sort of distilling Neely and Anderson to the essence, the question is really, was there a middle ground option available to the jury such that — that a reversal for a full trial would just be a reversal — I'm not saying that there was going to be a reversal, but if there was a reversal, it would only be to the issue of whether or not he should be found guilty of this enhancement in front of the jury. That would be the only issue that would go back. That's correct. We're at sentencing now. So there would not be a — there would not be a do-over of the trial in practical terms. That conviction happened. That's correct. So that element is met for purposes of the conditioned — the pretrial release. Correct. And 3147. That element is met. So the issue then is whether or not he had then knowledge of what he was signing. I think the question is slightly different in that the question is really, was there a middle ground to the jury in that when they found Perez guilty of those two firearm offenses, was there a middle ground that had it been explored further, the jury could have said, yes, he's guilty of these offenses, but he wasn't on pretrial release when he did so. I think that's the actual inquiry, and the factual nature of the evidence is undisputed in that point. And I want to note that that's certainly true at trial. There was a stipulation that the defendant was under indictment. The conditions that he signed were introduced without objection. There was testimony from the probation officer, and that certainly relates to notice, and I'll turn back there. And that was all introduced at trial? Pardon, Your Honor? That was introduced at trial? Yes, Your Honor. Yes. And — but I also want to note that this was not contested at sentencing either, at least as a factual matter. And Perez is right. He certainly preserved his apprendi objection at sentencing precisely because he had sentencing that the United States was going to proceed on Section 3147. However, Perez never raised a factual challenge to its application. And while I certainly appreciate the Court allowing Perez an opportunity today to decide or discern whether there is a — there is a potential middle path, the time for Perez to make that factual argument was before the district court at the sentencing proceeding because Perez certainly was aware at that point. You know, I think at the end of the day you're probably right, but the issue is a little more nuanced than that because if he is able to make an apprendi showing, I think for my own self that he has, apprendi is a constitutional violation, you bear the burden of showing harmlessness on appeal, so the burden at least of production shifts back to you to show why the error was harmless. Now maybe by staying silent he created a problem for himself at sentencing, but the burden is on you to show that the error is harmless beyond a reasonable doubt under Chapman, right? So I'm happy to shoulder that burden, and I believe the United States — But you have that burden, right? I agree, although I also read the United States' arguments before the district court to make the gist of the same harmlessness arguments today. And so while I do believe that the United States has the ultimate burden on appeal, I don't believe that that means that the defendant can simply stay silent at each stage in the further proceedings once the United States starts to outline its theory for why it applies, why the defendant had noticed, why these conditions were not met. I don't believe that the defendant can simply lie and wait to oral argument and then present those arguments in the first instance. But I do agree that — I don't know if you were the lawyer for the government at sentencing, but the lawyer at sentencing said there was no apprendi problem. I think they were saying there's no apprendi problem, but all of these arguments essentially become bound together. No, but if you're telling that this — he says apprendi violation. Government says no apprendi violation. If that's the government's position, he can just remain silent. And had it been a different lawyer litigating for the government on appeal and hadn't raised harmlessness, he might be sitting pretty because you haven't carried your burden of showing harmlessness. I think that we have throughout the briefing and throughout the argument. And I do want to address — there's sort of the two issues here. One is the evidence of the factual application of the enhancement. The other is the notice. And the Court noted in its questions to my opponent that the conditions that Perez signed were introduced at trial without objection. But there's also testimony from the probation officer at trial. I guess — I guess I'm just going to read from the sentencing. It appears that the reason that the district court found that there was no apprendi issue was because the district court said that issue was before the jury. Possession of a firearm while under indictment, probation officer did testify, and the record was made regarding Mr. Perez's advisement of the enhancement and his signature on the document. So I overrule the objection. There was testimony at trial regarding the conditions of release. Yes, Your Honor. That's exactly where I — That was before the jury. Yes, Your Honor. It was document 80, pages 132 to 136. And my recollection is on page 135 of that testimony, the probation officer talks about explaining these conditions to both Perez and to his mother, who was going to serve as his custodian while he was on release. And then also on page 136, the probation officer testified about the particular condition or the particular warning, I suppose I should say, that is at issue in this And that was count one of the indictment that he was found guilty of? I think that's the count it most naturally goes to. There's a separate sort of statutory question of whether it can connect to both and how that works. But yes, that's what the district court relied upon, and I think that's the correct analysis and the analysis that this court should rely upon for purposes of the analysis of harmlessness. And so there was no — there simply was no objection. There was no question about these facts at trial or at sentencing. There has instead been a separate legal question about the actual application of Apprendi. And the — that issue ultimately is harmless because the resolution of that legal question does not make a difference in the actual outcome in this case. Because the jury, when it found that Perez violated these two firearm statutes, necessarily would have had to have found that those also occurred while he was on pretrial release. I will also — Well, the second one was not so — not so clear on count two, right? Possession of a stolen firearm. So I — You don't have to be under indictment to be guilty of violating that particular criminal provision, right? Or do you? That's true in the — so I agree with Your Honor, and that's correct as far as it goes. But I think it still would be harmless in that context in the same way that the quantities of drugs were harmless in Neely and in Anderson, where even though it wasn't sort of inherent or bound up in the charge itself, the court still can look at the trial record and say, was there any evidence that allowed the jury to go a different way and find that this offense somehow did not occur when he was on release? And there was no possibility, no realistic possibility of that outcome here. I think to borrow the language of the court in Anderson, the ultimate question is whether there was a logical, legal, logical or evidentiary theory that would have allowed for a different outcome. And there was no realistic different outcome in Anderson. There is no realistic different outcome here. I think at bottom, Perez's fundamental problem is that Section 3147 was designed for cases like this one. It is true that there are few defendants like Perez who commit crimes in such a heinous fashion that even a 10-year additional statutory sentence will not reach the actual guidelines range. That's true, however, because of the particularly heinous way in which Perez violated these crimes. But there are a lot of, I mean, there are a lot of, as I said, I think you're probably ultimately right in this case, but there are a lot of scenarios where you don't need to exceed the statutory maximum for the underlying offenses and you just apply the certain number of levels and then impose a sentence within the underlying statutory range. So I'm not sure that this case was meant, you know, for someone exactly like Mr. Perez. It's meant for a range of offenders, some of whom commit very serious offenses and some of whom commit relatively minor offenses given the state of the world while they're on release. So, Your Honor, I think that's a good point, and if I might respond in this way. Section 3147 has two pieces to it. It sets a floor and it sets a ceiling. It sets a minimal new floor, and many defendants trigger that piece of it, namely the guidelines enhancement. The United States admits that the ceiling, that outer limit, was meant for defendants like Perez who committed particularly heinous crimes while on pretrial release, breached the Court's trust in the most fundamental of ways, and that that ceiling is appropriate in a circumstance like his. And unless the Court has further questions, the United States respectfully would ask the Court to affirm. Thank you. Thank you very much, Mr. Gray. We talk about what was before the jury, and the jury was instructed, with respect to Count 3, on those elements. That was part of the indictment, but it was not listed as 3147, which the government could have done. The government could have very easily said, hey, we are also going to add 3147 to put us on notice. And but the judge, Judge Beaverstock, did instruct the jury on Count 3, and he was acquitted on Count 3. So to the degree that the information was before the jury, through an exhibit or And that might be a unique set of circumstances in this case, but I think it's one without, not without importance. But wasn't he also convicted of Count 1? Yes, sir. And it's a different element. Count 1 required him to be under indictment. Yes, sir. Right? I mean, I guess you could commit the offense in Count 1 while not being on release. You could. Obviously not applicable to these facts, but you could. But have slipped him a gun while he was in prison. Correct. Yeah. Whatever. And what it comes down to, really, for me, is, you know, the fairness and the integrity of the proceedings, which is part of, which is really what we also need to look at. When does the government have to decide if they're going to implement 3147? And that's a rhetorical question. The, they had two years from the time that Perez committed his crimes. And the, and by the way, the capital murder charge is still pending in state court. They didn't indict him for two years. And they, also, you know, there was great care taken with respect to the gun charge and, and also whether or not the, whether or not the gun was discharged. And as you may recall, the jury was given a separate question with respect to any convictions that might have been had under Counts 3 and 4. And so they were able to do that because I think the government contemplated that enhancement. If they don't contemplate the enhancement until after trial, that's not fair. And, and I think it does reflect on the integrity of the proceedings. But I guess the issue is that this particular statutory provision doesn't come into play until you actually are convicted of the, of an offense committed while under, you know, while released under this chapter. So you, you have to have the conviction first. So it's not like a, a notice of intent of like wanting to use 403 evidence or something like that where they have to give you notice before trial. This is, this is something that they can only do after there's been a conviction. And, and really, and Judge Lagoa, I think that, that actually strengthens my argument on the first set of points that I made, that that's why the, the proper interpretation of 3147 is exactly how the guidelines have suggested and the application notice suggested that it be implemented. Because of, you know, I, I really hate to say that it's, that, that there's ambiguity with the statute, but I think that that's what makes it, makes it more workable. Or you give notice if you are planning on going above the statutory maximum. So my question, again, rhetorically, is when do they have to decide? You know, can they decide after the fact? Well, that, from, from my perspective, it's just, it's just not fair. And, and I would ask that this Court reflected under these unique circumstances that Apprende was violated or that, that this Court take a very strong, close look at, at the proper interpretation of 3147 and how to apply it with respect to sentencing if, if it is not an Apprende issue. Thank you very much. All right. Thank you both very much. Thank you. Thank you.